UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MIRKO OTTO,

    Plaintiff,

v.

ALEJANDRO MAYORKAS, Secretary,
U.S. Department of Homeland Security;
UR MENDOZA JADDOU, Director, U.S.
Citizenship and Immigration Services;
ALISSA EMMEL, Chief, U.S. Citizenship
and Immigrant Services' Immigrant Investor
Program Office; DEPARTMENT OF
HOMELAND SECURITY; and UNITED
STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

    Defendants.
_____/

Case No. 8:22-cv-1172-WFJ-SPF

**<u>ORDER</u>**

Before the Court is Defendants' Amended Motion to Dismiss (Dkt. 11), Plaintiff Mirko Otto's Response (Dkt. 13), and Defendants' Reply (Dkt. 16). After careful review of the Complaint (Dkt. 1), the submissions of the parties, and the applicable law, the Court concludes the motion should be granted and the case dismissed without prejudice.

**I.  BACKGROUND**

Accepting all factual allegations as true and construing them in the light most favorable to the plaintiff,[1] the Court sets forth the following pertinent events giving rise to the Complaint. Plaintiff Mirko Otto, a German national, came to the United States in July 2016 with a temporary E-2 treaty investor visa granted by the U.S. Department of State.[2] *Id.* ¶¶ 1, 2, 14. Plaintiff alleges that he has since made significant E-2 investments in the United States. *Id.* ¶ 2.

In Plaintiff's pursuit of permanent residence, he chose the immigrant investor opportunity under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1153(b)(5), also known as the "EB-5" program.[3] Dkt. 1 ¶¶ 2, 15. The INA authorizes EB-5 visas for qualified immigrants seeking to enter the United States to "engag[e] in a new commercial enterprise" (1) in which the applicant has invested $500,000 in a "targeted employment area" and (2) which will create "full-time employment for not fewer than 10 United States citizens" or other qualified workers. 8 U.S.C. § 1153(b)(5)(A)(i)–(ii) (requiring new commercial enterprise

---

[1] *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted).
[2] Information on the qualifications and obligations of an E-2 Treaty Investor can be found at the following USCIS webpage: https://www.uscis.gov/working-in-the-united-states/temporary-workers/e-2-treaty-investors.
[3] *See also EB-5 Immigrant Investor Program*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/working-in-the-united-states/permanent-workers/eb-5-immigrant-investor-program (last updated Sept. 29, 2022).

for ten qualified workers), (B)(ii) (defining targeted employment area), (C)(ii) (requiring $500,000 investment).[4]

To meet the EB-5 immigrant investor requirements, Plaintiff alleges that he invested $500,000 in a commercial enterprise known as "CanAm Texas Regional Center LP I" in late 2017. Dkt. 1 ¶¶ 2, 16. He notes that the CanAm enterprise was formed for the purpose of creating at least 10 new full-time jobs in an underserved area designated by the United States as a "targeted employment area." *Id*. ¶¶ 2, 15, 16. Specifically, the CanAm enterprise was "to raise capital for Pearl Houston Medical Center, LLC," which is controlled by "a privately held developer and operator managing a portfolio of Hilton and Marriott hotel-branded properties in Southwest Texas." *Id*. ¶ 16. Plaintiff alleges he complied with the EB-5 requirements by investing in this enterprise, which is listed by the United States Citizenship and Immigration Services ("USCIS") as an approved Regional Center.[5] *Id*. ¶ 17; Dkt. 13 at 3.

On June 3, 2019, Plaintiff filed his Form I-526 petition with the USCIS. Dkt. 1 ¶¶ 1, 17. Almost three years later, on May 21, 2022, Plaintiff filed this

---

[4] For petitions filed on or after March 15, 2022, the required investment amount is $800,000. Consolidated Appropriations Act, 2022, Pub. L No. 117-103, § 110, 136 Stat. 49, 1072 (2022).

[5] A USCIS-approved Regional Center is "an economic unit, public or private, in the United States that is involved with promoting economic growth." *EB-5 Immigrant Investor Regional Centers*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/working-in-the-united-states/permanent-workers/eb-5-immigrant-investor-program (last updated Sept. 29, 2022).

action against the above-styled Defendants, alleging prejudice by the undue delay in the processing of his I-526 petition. *Id.* ¶ 3. Plaintiff seeks a writ of mandamus pursuant to 28 U.S.C. § 1361 (the "Mandamus Act") directing the USCIS to adjudicate his I-526 petition. *Id.* ¶ 1 & at 11. Additionally, Plaintiff requests an order (1) declaring that the failure to adjudicate constitutes an unreasonable failure to act under the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq.*, and (2) compelling the adjudication of his I-526 petition within 60 days or within a reasonable time determined by the Court. Dkt. 1 ¶ 31 & at 11. Defendants now move to dismiss for lack of subject matter jurisdiction and failure to state a claim. Dkt. 11.

## II. LEGAL STANDARD

A Rule 12(b)(1) challenge to subject matter jurisdiction may be either facial or factual. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Courts employ standards similar to Rule 12(b)(6) to review a facial attack, taking as true the allegations in the complaint and construing all factual inferences in favor of the plaintiff. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). The pleading standards of *Twombly* and *Iqbal*[6] apply to determine the sufficiency of the complaint under Rule 12(b)(6).

## III. DISCUSSION

---

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007);  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

4

Defendants contest the viability of mandamus relief under both Rules 12(b)(1) and 12(b)(6). Defendants also seek a Rule 12(b)(6) dismissal of Plaintiff's APA claim. To date, Plaintiff's I-526 petition remains pending.

### A. *Mandamus*

Defendants first argue that the Court lacks subject matter jurisdiction to issue a writ of mandamus to compel the defendant agencies, and officers of those agencies, to perform a duty allegedly owed to Plaintiff. *See* 28 U.S.C. § 1361. To issue a writ of mandamus, (1) the plaintiff must have a clear legal right to the relief, (2) the agencies or officers and employees must have a non-discretionary duty to act, and (3) there must be no other adequate remedy available. *Serrano v. United States Att'y Gen.*, 655 F.3d 1260, 1263 (11th Cir. 2011) (citing *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003)). Mandamus is an extraordinary remedy, and the plaintiff bears the burden of establishing his right to the writ is clear and indisputable. *Serrano*, 655 F.3d at 1263 (citations omitted).

In viewing the first two factors together, the Court must determine whether Defendants have a clear duty to act on Plaintiff's I-526 petition within a certain time frame. The INA provides: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). This language conveys a congressional desire, a "sense," that six months is sufficient. *See Bian v.*

*Clinton*, 605 F.3d 249, 255 (5th Cir.) (holding that Congress's sense of proper pace for adjudicative process does not establish a clear and certain right), *vacated by* No. 09-10568, 2010 WL 3633770 (5th Cir. Sept. 16, 2010) (remanding because case became moot when applicant's visa number became available).[7]  As further indication that the six-month completion date is not mandatory and does not create a clear duty, the word "should" is used.  *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008) (describing the word "should" as permissive, not mandatory).  Without a statute or regulation establishing an obligatory time frame within which to adjudicate an INA application, mandamus does not lie to challenge such a discretionary act.  *See Osechas Lopez v. Mayorkas*, No. 22-civ-21733, 2023 WL 152640, at *3–4 (S.D. Fla. Jan. 10, 2023) (collecting cases).

As to the last element of a mandamus claim, Plaintiff's Complaint recognizes that the APA provides an alternative and available means to relief.  *See Serrano*, 655 F.3d at 1264 (holding APA provides an adequate alternative remedy to mandamus relief).  Plaintiff even acknowledges that § 1571(b) does not mandate agency action within 180 days, nor create an enforceable right to a decision within 180 days of filing an EB-5 application.  Dkt. 13 at 5.  Having determined that none

---

[7] Two courts in the Eleventh Circuit have addressed this statement.  See *Osechas Lopez v. Mayorkas*, No. 22-civ-21733, 2023 WL 152640, at *3–4 (S.D. Fla. Jan. 10, 2023); *Lammers v. Chief, Immigrant Inv. Program*, No. 6:21-cv-668-GAP-GJK, 2021 WL 9408916, at *2 (M.D. Fla. July 28, 2021).

of the three threshold requirements have been satisfied, the mandamus claim is dismissed.

### **B.   APA**

Defendants next contend that the Complaint fails to state a claim for relief under the APA because Plaintiff has not shown that an adjudication of his I-526 petition was unlawfully withheld or unreasonably delayed.  The Court agrees.

The APA requires federal agencies to address and conclude matters presented to them "within a reasonable time."  5 U.S.C. § 555(b).  If the agency action is "unlawfully withheld or unreasonably delayed," the APA directs a reviewing federal court to compel the agency to act.  *Id.* §§ 702, 706(1).  Only ministerial or non-discretionary acts may be compelled, and the district court is not permitted to direct *how* the agency shall act.  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

The parties disagree whether a claim for unreasonable delay in adjudications of I-526 petitions may be decided on a motion to dismiss.  Plaintiff takes the position that an unreasonable delay claim should not be analyzed until after discovery.  Dkt. 13 at 7.  He contends that most courts that have denied a motion to dismiss did so on the basis that the reasons for the USCIS's delay require a fact specific inquiry.  *See* Dkt. 13 at 7–10; *see, e.g.*, *Velagapudi v. U.S. Citizenship & Immigr. Servs.*, No. 4:22-cv-295-SRW, 2022 WL 4447409, at *7−8 (E.D. Mo.

2022) (denying motion to dismiss case concerning delayed I-526 petition adjudication); *Raju v. Cuccinelli*, No. 20-cv-1386-AGT, 2020 WL 4915773, at *2−3 (N.D. Cal. 2020) (same). On the other hand, Defendants argue that the record is often sufficient at the pleading stage to grant a motion to dismiss. *See, e.g.*, *Osechas Lopez*, 2023 WL 152640, at *5 (collecting cases and granting motion to dismiss for I-526 petition adjudication delay); *Thakker v. Renaud*, No. 20-1133, 2021 WL 1092269, at *5 (D.D.C. Mar. 22, 2021) (same).

In assessing claims for agency delay under § 555(b), courts often consider the six factors enunciated in *Telecommunications Research and Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984). *See, e.g.*, *Osechas Lopez*, 2023 WL 152640, at *5. The *TRAC* factors include:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal citations and quotation marks omitted).[8]

---

[8] The Eleventh Circuit has not expressly adopted the *TRAC* factors. *See Osechas Lopez*, 2023 WL 152640, at *5 (citing *Santiago v. Mayorkas*, 554 F. Supp. 3d 1340, 1353 (N.D. Ga. 2021));

In considering *TRAC* factors, courts are divided over whether to assess them at the pleading stage or wait until after discovery of additional facts not disclosed in the pleadings. *Compare Oscechas Lopez*, 2023 WL 152640, at *5 (collecting cases considering *TRAC* factors at pleading stage and granting motion to dismiss) *with Mondragon Tinoco v. Mayorkas*, No. 1:20-cv-4787-MLB, 2021 WL 3603373, at *9–10 (N.D. Ga. Aug. 13, 2021) (citing cases, noting split, and declining to consider *TRAC* factors on a motion to dismiss).[9]

The Court finds that the record here contains enough facts to evaluate the *TRAC* factors on this motion to dismiss. While urging this Court to allow the case to proceed to discovery, Plaintiff nonetheless addresses some of the *TRAC* factors in his response. By doing so, Plaintiff at least opens the door for assessment of these factors. *See Osechas Lopez*, 2023 WL 152640, at *5 n.5 (considering *TRAC* factors which were briefed by plaintiff and therefore ripe for disposition on motion to dismiss). Missing is any suggestion as to what such discovery would reveal.

---

*Mondragon Tinoco v. Mayorkas*, No. 1:20-cv-4787-MLB, 2021 WL 3603373, at *9 (N.D. Ga. Aug. 13, 2021).

[9] *See also Punt v. U.S. Citizenship & Immigr. Servs.*, No. 22-1218, 2023 WL 157320, at *3 (D.D.C. Jan. 11, 2023) (citing *Brzezinki v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376, 2021 WL 4191958, at *4 (D.D.C. Sept. 15, 2021)) (evaluating *TRAC* factors at motion to dismiss phase where record contains sufficient facts); *but see Lammers v. Chief, Immigrant Inv. Program*, 6:21-cv-668-GAP-GJK, 2021 WL 9408916, at *2 n.3 (M.D. Fla. July 28, 2021) (citing cases and declining to consider *TRAC* factors on motion to dismiss).

At the time this action was filed, Plaintiff's I-526 petition had been pending for 35 months, save the time when the USCIS placed all I-526 petition adjudications on hold. The statutory authorization for the Regional Center Program, which applies to Plaintiff's investment choice, expired on July 21, 2021. On March 15, 2022, the new legislation, including the EB-5 Reform and Integrity Act, became law. During this lapse or statutory "sunset," none of the I-526 petitions pending with the USCIS were adjudicated. Given this eight-and-a-half-month period of no action, Plaintiff's I-526 had been actively pending for a total of 26.5 months when he filed the instant action in this Court. At least one court has granted a motion to dismiss where the USCIS failed to adjudicate an I-526 petition for 27.5 months at the time suit was filed. *See Osechas Lopez*, 2023 WL 152640.

In addition to this stoppage of processing caused by the statute's sunset, the USCIS implemented a new "visa availability" approach in the processing of visas, which went into effect on March 31, 2020. Prior to this new approach, the first-in-first-out method was used for EB-5 visas. Under the former approach, the immigrant's position in the line awaiting adjudication was determined by the "priority date," or the date the I-526 petition was filed. 8 U.S.C. § 1153(e); 22 C.F.R. § 42.54. Under the new approach, an immigrant's position in the queue depends on the number of available visas for that immigrant's country of origin. According to Plaintiff, there is no backlog associated with Germany.

Turning to the *TRAC* factors, the first two address whether the USCIS is governed by a "rule of reason" in the processing of visa applications and whether Congress has set a timetable for agency action. *TRAC*, 750 F.2d at 80. It is well-established that the visa availability approach for the processing of I-526 petitions constitutes a recognized rule of reason as well as an "identifiable rationale." *Bega v. Jaddou*, No. 22-cv-2171 (BAH), 2022 WL 17403123, at *6 (D.D.C. Dec. 2, 2022) (citing *Mokkapati v. Mayorkas*, No. 21-cv-1195 (BAH), 2022 WL 2817840, at *5 (D.D.C. July 19, 2022)); *Telles v. Mayorkas*, No. 21-cv-395 (TJK), 2022 WL 2713349, at *3 (D.D.C. July 13, 2022).

Although Plaintiff asserts that the "rule of reason" permits viewing the six months as a benchmark, Dkt. 13 at 5, all agree that § 1571(b) is not mandatory. Courts are left to provide the guidance. In that vein, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Yavair v. Pompeo*, No. 19-cv-2524 (SVW-JC), 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019). Although Plaintiff emphasizes that the real time delay is over three years, this does not take into account the period when no statutory authority existed to decide EB-5 petitions. The delay here is less than three years from the filing of the petition to the filing of the Complaint, which is not unreasonable as a matter of law. *See Osechas Lopez*, 2023 WL 152640, at *5 (granting motion to dismiss

11

where USCIS failed to adjudicate I-526 for 27.5 months at the time suit was filed); *Mokkapati*, 2022 WL 2817840, at *6 (same for thirty-two months); *Telles*, 2022 WL 2713349, at *4 (same for forty-two months). Accordingly, the first two factors clearly weigh in favor of Defendants.

Skipping to the fourth factor, consideration must be given to the effect of expediting Plaintiff's petition on the USCIS's "activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Many courts have expressed concern over elevating one petitioner's position in the visa queue to the detriment of all others legitimately ahead of the petitioner, given that an order compelling agency action would effectively reorder the agency's established priorities. *See, e.g., Palakuru v. Renaud*, 521 F. Supp. 3d 46, 52 (D.D.C. 2021). Moreover, switching positions of applicants would "produce no net gain" in the overall progression of adjudications. *Mashpee Wampanoag Tribal Council, Inc. v. Norton,* 336 F.3d 1094, 1100 (D.C. Cir. 2003). Consequently, this factor weighs in favor of Defendants.

The third and fifth factors address (1) whether "human health and welfare are at stake" and (2) the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Plaintiff's Complaint does not allege any specific physical or mental health concerns. He alleges that the delay "continues to cause him and his family undue hardship and it deprives him of all the benefits of becoming a legal permanent resident of the United States." Dkt. 1 ¶ 29. In his response,

12

Plaintiff contends that because he has now filed an I-485 petition to be concurrently considered with his I-526 petition, and he cannot establish eligibility because he cannot demonstrate that the underlying immigrant visa is "immediately available." Dkt. 13 at 4. Nevertheless, all of these facts taken as a whole do not weigh in favor of Plaintiff. *See Telles*, 2022 WL 2713349, at *4 (finding economic harm does not weigh in favor of finding unreasonable delay); *Bega*, 2022 WL 17403123, at *7 (finding uncertainties about planning the future are inherent in the immigration process and economic in nature).

The last factor alleviates the need to find "any impropriety lurking behind" the agency's delay. Bad faith has not been pleaded, only that "the USCIS is frustrating countless I-526 petitions by way of slow processing for no justified reason." Dkt. 1 ¶ 26. Plaintiff adds in his response that the USCIS's "lack of attention, coupled with a total effort to avoid accountability, is unconscionable and requires corrective action by our third branch." Dkt. 13 at 4. Notwithstanding these contentions, this factor does not weigh in favor of either party. Having found the record sufficient to review all six *TRAC* factors, the Court finds the complaint does not state a claim for unreasonable delay under the APA.

## IV.   CONCLUSION

Accordingly, the motion to dismiss (Dkt. 11) is granted. The case is dismissed without prejudice. The Clerk is directed to terminate any pending motions and deadlines and close the case.

**DONE AND ORDERED** at Tampa, Florida, on February 17, 2023.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO:**
Counsel of record